**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ALFREDO GARRIDO CALZADO,

Petitioner,

vs.

TODD BLANCHE, *et al.*,

Respondents.

Case No.: 2:26-cv-02328-GMN-DJA

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Alfredo Garrido Calzado's First Amended Petition for Writ of Habeas Corpus, (ECF No. 9). Federal Respondents Michael Bernacke, Todd Blanche, Todd Lyons, Markwayne Mullin, and Kerri Ann Quihuis filed a Response, (ECF No. 10), to which Petitioner filed a Reply, (ECF No. 11).

For the reasons discussed below, the Court GRANTS the First Amended Petition and orders Petitioner's immediate release, subject to certain conditions. This decision does not nullify Petitioner's removal order, nor does it grant Petitioner new immigration status. Rather, Petitioner must be released because the Due Process Clause of the Fifth Amendment prohibits indefinite detention for noncitizens without a reasonably foreseeable path for removal. Although Petitioner has been detained for almost five months, the Government has failed to remove him and has not demonstrated that it will be able to in the near future. Petitioner's release is subject to several conditions of supervision, and he may be re-detained only when the Government provides proof of a change in circumstances that makes his removal reasonably foreseeable.

///

///

///

## I. BACKGROUND

Petitioner Alfredo Garrido Calzado is a native of Cuba. (First Am. Pet. 3:21, ECF No. 9); (*see also* I-213 at 2, Ex. 2 to Resp., ECF No. 10-2). Cuba expelled him in 2014 because of his involvement in a human rights organization. (First Am. Pet. 3:21–23). By 2015, Petitioner made his way to the Czech Republic, where he was eventually granted asylum, became a citizen, and obtained a passport. (*Id.* 3:25–27). In 2022, he used his Czech passport to enter the United States as a tourist. (*See* Not. Intent at 1, Ex. 1 to Resp., ECF No. 10-1); (I-213 at 2, Ex. 2 to Resp.).[1] He was authorized to remain in the United States until December 12, 2022, but he did not leave after that date. (*See* Not. Intent at 1, Ex. 1 to Resp.).

In June 2026, Petitioner was arrested in Las Vegas, Nevada, on a domestic battery charge. (*See* I-213 at 2, Ex. 2 to Resp.). He was convicted of misdemeanor domestic battery on July 2, 2026, and sentenced to a suspended jail sentence of 180 days. (*See id.* at 3). Immigration and Customs Enforcement ("ICE") detained him upon his release from jail on July 3, 2026. (*See id.* at 2). That same day, he was issued a final order of removal to the Czech Republic. (*See* Final Admin. Remov. Order at 1, Ex. 1 to Resp., ECF No. 10-1).

Petitioner has been in immigration detention for almost five months. The parties present conflicting statements about his ongoing detention. Petitioner explains that "ICE has told him to direct his family to contact the Czech Republic to get him a new passport. However, [Petitioner] has no family in Czech Republic, and he does not speak any language other than Spanish. Therefore, he has no one to assist him in getting a new passport and cannot obtain one his self [sic]." (First Am. Pet. 4:6–10). Petitioner seemingly does not have a valid passport; he believes that his Czech passport expired in 2025. (*See id.* 4:26–27). Respondents, by contrast,

[1] The Notice of Intent to Issue a Final Administrative Removal Order lists September 14, 2022, as Petitioner's date of admission. (*See* Not. Intent at 1, Ex. 1 to Resp.). However, the I-213 records September 4, 2012, as Petitioner's date of admission. (*See* I-213 at 2, Ex. 2 to Resp.). Because both the First Amended Complaint and the Response use the 2022 date, the Court adopts that date as well.

claim that "Petitioner has refused to sign the travel document request that would allow the Government to deport him to the Czech Republic and thus release him from custody." (Resp. 11:12–14, ECF No. 10). The attached I-213 states that "[Petitioner] was advised of his right to speak to a consulate officer from Czech Republic," "[immigration officials] sent the Embassy of the Czech Republic a Notification of Right to Consular Notification and Communication," and "T file was created in RAILS and will be forwarded to the detained docket officer for travel documents inquiry with the consulate of Czech Republic." (I-213 at 3–4, Ex. 2 to Resp.). However, Respondents do not submit any evidence of the travel document requests Petitioner allegedly refused to sign, communications with Czech officials, or other attempts to effectuate Petitioner's removal.

## II. LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Statutory Detention Scheme

When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an Immigration Judge ("IJ"). 8 U.S.C. § 1229a. Removal proceedings determine not only whether an individual may be

removed from the United States but also to where they may be removed. In the first instance, the noncitizen is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the noncitizen does not do so, the IJ will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).

Meanwhile, the noncitizen is also entitled to seek various protections, including asylum, statutory withholding of removal, and Convention Against Torture ("CAT") protections. 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary. *See e.g.*, 8 U.S.C. § 1158; 8 C.F.R § 208.2. Others are mandatory, meaning that protection must be given if the conditions are met. Withholding of removal is a mandatory form of protection preventing deportation to the country or countries where an IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). CAT protection is a mandatory protection against deportation to a country where the IJ finds that the individual is likely to be tortured. *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024).

## III. <u>DISCUSSION</u>

Petitioner alleges that he is entitled to habeas relief because (1) ICE's current policy and procedures relating to third-country removals violate the Administrative Procedure Act ("APA") and Petitioner's Fifth Amendment due process rights; (2) Petitioner's detention under that policy violates his Fifth Amendment due process rights; (3) his detention violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable as required by *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (4) his detention violates the Immigration and Nationality Act ("INA"); and *(See generally* First Am. Pet.). The Court begins by addressing Petitioner's arguments under the Fifth Amendment.

**A. Petitioner's Detention Violates the Fifth Amendment**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by the Department of Homeland Security ("DHS") that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant

likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**1. Rebuttable Presumption**

Federal Respondents argue that Petitioner cannot seek relief under *Zadvydas* because he has not yet been detained for six months. (Resp. 11:3–15). As another judge in this district has explained, *Zadvydas* adopted this six-month "presumption" to "guide lower court determinations." *Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-cv-02567-MMD-MDC, 2026 WL 266756, at *2 (D. Nev. Feb. 2, 2026) (quoting *Zadvydas*, 533 U.S. at 701). But that presumption did not create a bright line rule that would "automatically authorize all detention until it reaches constitutional limits." *See Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020). Indeed, in *Vijdani v. Mattos*, No. 2:25-cv-02496-GMN-EJY, 2026 WL 560209 (D. Nev. Feb. 27, 2026), this Court joined many other district courts and found that the six-month presumption in *Zadvydas* is rebuttable and therefore does not foreclose claims challenging detention less than six months. The Court adopts its discussion of this issue in *Vijdani* here. *See Vijdani*, 2026 WL 560209, at *3–4.

Here, Petitioner has been detained with a final order of removal since July 3, 2026—nearly five months. Therefore, Petitioner's 90-day-post removal period has passed, and if Petitioner can demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future, he is eligible for release under supervision.

///

///

**2. Petitioner's Initial Burden**

Petitioner argues that his removal is not reasonably foreseeable under *Zadvydas*. He claims that "ICE has told him to direct his family to contact the Czech Republic to get him a new passport. However, [Petitioner] has no family in Czech Republic, and he does not speak any language other than Spanish. Therefore, he has no one to assist him in getting a new passport and cannot obtain one his self [sic]." (First Am. Pet. 4:6–10).

Facing a similar claim from a detainee who was expected to coordinate their own travel, another district court in the Ninth Circuit explained that it was "perplexed and confounded by Respondents' insistence that the burden of facilitating removal should be shifted to someone who they themselves hold in a prison-like detention setting. . . . Respondents assert Petitioner's burden without providing any explanation as to how Petitioner might be expected to make such calls or contacts with foreign consulates while detained." *Saadhom v. Bondi*, 829 F. Supp. 3d 907, 916 (W.D. Wash. 2026) (citations omitted). The Court finds that reasoning persuasive and adopts it here. Given the restrictive nature of immigration detention, it is unreasonable to expect a detained individual to apply for his own passport. Petitioner cannot remain in detention merely because of his inability to obtain a Czech passport *while detained*. The Court cannot find that such circular reasoning justifies five months of civil detention.

Consequently, Petitioner puts forth evidence to support an initial finding that there is no significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. While Petitioner is detained, it would be unlikely that he could apply for and obtain a Czech passport, and ICE's alleged reliance on his ability to do so supports Petitioner's claim that ICE cannot effectuate his removal.

**3. Respondents' Burden**

The burden thus shifts to Respondents to produce evidence sufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 701. By Respondents' own admission, they

have not secured the travel documents necessary to remove Petitioner during his five months of detention. They do not address Petitioner's claim that ICE placed the burden on him to obtain a Czech passport while in detention. Instead, Respondents argue that the only roadblock to Petitioner's removal is his refusal to sign a "travel document request that would allow the Government to deport him to the Czech Republic and thus release him from custody." (Resp. 11:12–14).

Respondents do not provide that travel document request or any other documentation of Petitioner's refusal to sign. They instead attach the I-213, which states that "[Petitioner] was advised of his right to speak to a consulate officer from Czech Republic," "[immigration officials] sent the Embassy of the Czech Republic a Notification of Right to Consular Notification and Communication," and "T file was created in RAILS and will be forwarded to the detained docket officer for travel documents inquiry with the consulate of Czech Republic." (I-213 at 3–4, Ex. 2 to Resp.). But Respondents do not submit any evidence of actions taken after the creation of that file, communications with Czech officials, or other attempts to effectuate Petitioner's removal. In sum, Respondents provide no evidence at all—not even a declaration—to support their assertion that Petitioner would be removed but for his refusal to sign one document.

While a noncitizen is not entitled to relief under *Zadvydas* where his ongoing detention is the result of his "fail[ure] to provide requested documentation to effectuate his removal," *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003), Respondents fail to meet their burden to show that Petitioner has obstructed his removal. Other courts that have denied *Zadvydas* claims on this ground have relied on evidence of the government's attempts to obtain travel documents. *See, e.g.*, *Guo v. Asher*, No. 2:20-cv-01613-RSM-BAT, 2021 WL 783502, at *7–8 (W.D. Wash. Jan. 19, 2021) (citing an ICE employee's declaration that "[a]ccording to ICE records, Petitioner refused ICE requests to complete and sign a travel document application on

[14 separate dates]”), *report and recommendation adopted*, 2021 WL 780904 (W.D. Wash. Mar. 1, 2021); *Bowen v. Garland*, No. 1:22-cv-00402-SKO, 2022 WL 2672477, at *3 (W.D. Wash. July 11, 2022) (noting the travel documents in the record as well as the petitioner’s own admission that he refused to comply with ICE’s travel plans), *report and recommendation adopted*, 2022 WL 17405867 (W.D. Wash. Dec. 2, 2022); *Pelich*, 329 F.3d at 1059 (relying on a letter from the Polish consulate that “explicitly reserved its determination of [petitioner’s] citizenship status pending review of” a passport application petitioner refused to complete).

By contrast, in cases in which respondents claim that a petitioner refuses to cooperate but fail to provide sufficient facts or evidence “to support this finger-pointing,” courts hold that *Zadvydas* applies. *Saadhom*, 829 F. Supp. 3d at 916; *see also Yukseloglu v. Bondi*, No. C26-467RSM, 2026 WL 617367, at *3 (W.D. Wash. Mar. 5, 2026) (“The Court agrees with Petitioner that ‘Respondents offer no evidence that removal is significantly likely in the reasonably foreseeable future’ because ‘they do not identify . . . any travel document issued or forthcoming, or any concrete, time-bound plan for removal.’”). Similarly, courts repeatedly hold that the government’s expressed intent to submit a travel document request is insufficient to show a likelihood of reasonably foreseeable removal. *See, e.g.*, *Bilal v. Bondi*, No. 2:26-cv-00985-TLF, 2026 WL 1784779, at *3 (W.D. Wash. June 22, 2026); *Hoac v. Becerra,* No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (explaining that Respondents’ intent to “complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future”); *Van Huynh v. Bondi*, No. C25-2093-KKE, 2025 WL 3534210, at *3 (W.D. Wash. Dec. 10, 2025) (noting that even if respondents requested travel documents from petitioner’s home country, they failed to meet their burden because they provided no “timeline” or “any information about the likelihood” that the country’s government would approve the request); *Cao v. Scott*, No. 2:25-cv-02373-RSM-GJL, 2026 WL 279352, at *3 (W.D. Wash. Jan. 26, 2026) (“Respondents’ generalized

arguments concerning the potential repatriation of Petitioner to China and the possibility of procuring her travel document is insufficient to show China will accept Petitioner."), *report and recommendation adopted*, 2026 WL 285817 (W.D. Wash. Feb. 3, 2026).

The Court finds this reasoning persuasive and adopts it here. Respondents offer no evidence that removal is significantly likely in the reasonably foreseeable future. Their unsupported claim that Petitioner could be removed but for his refusal to sign a travel document request is insufficient to justify his indefinite detention. Respondents' expressed intent to submit a travel document request to the Czech Republic does not salvage their argument either.

**B. Petitioner is Entitled to Due Process Before Removal to a Third Country**

Petitioner also challenges his potential removal to a country other than Cuba or the Czech Republic without constitutionally adequate procedures. (First Am. Pet. 11:12–13:9). He argues that, to the extent his detention is meant to facilitate his removal to a third country, that detention is unlawful because ICE's procedure for third-country removal would violate his due process rights. (*Id.* 13:1–9). Respondents claim that DHS "does not seek to removal [sic] Petitioner to a third country and there are no records that indicate otherwise," so Petitioner's argument about third-country removal is "mere speculation." (Resp. 11:19–24). However, the record before the Court indicates that attempts to remove Petitioner to the Czech Republic (if they have even occurred) have thus far been minimal and ineffective. The Court therefore finds that Petitioner's fear that ICE will seek to remove him to a different country is not speculative, and he has Article III standing to make this claim. *See, e.g.*, *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025) ("The Court is satisfied that, as a noncitizen with a removal order—who is, therefore, inherently subject to [DHS's policy of third country removal with minimal notice]—Petitioner has sufficiently demonstrated 'that he is realistically threatened by a repetition of the violation' at issue." (quoting *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012))).

"Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (mem.). Accordingly, the Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a country other than Cuba or the Czech Republic.[2]

**C. Scope of Relief**

First, Petitioner requests that he be released immediately. (First Am. Pet. 15:3). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the

[2] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the stated policy violates the APA.

[noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted.[3] *See Zadvydas*, 533 U.S. at 699–700.

Second, Petitioner requests that the Court prohibit Respondents from removing him to a third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. (First Am. Pet. 15:3–7). For the reasons discussed above, the Court grants this requested relief.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition, (ECF No. 9), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention no later than **November 25, 2026,** between the hours of **12:00 P.M. and 3:00 P.M.** under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Counsel for Petitioner (or their

---

[3] 8 U.S.C. § 1231(a)(3) provides:

> If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—
>
> (A) to appear before an immigration officer periodically for identification;
>
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>
> (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
>
> (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window. Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property upon his release.

**IT IS FURTHER ORDERED** that the parties must file a **JOINT** Status Report by **November 30, 2026**, to certify compliance with the Court's order, including the date and time of Petitioner's release.

**IT IS FURTHER ORDERED** that Respondents are prohibited from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a country other than Cuba or the Czech Republic without providing Petitioner with adequate notice of intent to seek removal to that country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that Counsel for Respondents is directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is kindly directed to enter judgment in favor of Petitioner.

**DATED** this 24 day of November, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT